UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
-------------------------------------------------------

| | : | |
|---|---|---|
| MARK TURNER, | : | CASE NO. 4:07-CV-163 |
| Plaintiff, | : | |
| vs. | : | OPINION & ORDER |
| | : | [Resolving Doc. Nos. 17, 29] |
| LIBERTY MUTUAL FIRE INSURANCE CO., | : | |
| Defendant. | : | |

-------------------------------------------------------

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

With this Opinion and Order, the Court decides whether to grant a motion for partial summary judgment on Plaintiff's claim that the Defendant acted in bad faith when it denied fire insurance claims filed by Plaintiff. Defendant Liberty Mutual Fire Insurance Co. ("Liberty Mutual") files the motion. [Docs. 17, 29.] Plaintiff Mark Turner ("Turner") opposes Liberty Mutual's motion and presents evidence that the insurer acted in bad faith in denying his insurance claims following a fire that completely destroyed his home and ruined his automobile.

For the reasons presented below, the Court **DENIES** Defendant Liberty Mutual's motion for partial summary judgment on the issue of its bad faith denial of Plaintiff Turner's insurance claims.

### I. Background

At approximately 8:00 a.m on January 25, 2006, Plaintiff Turner left his home in Diamond, Ohio to run some errands and visit his girlfriend. [Docs. 27-2, 27-3.] Approximately one hour later his house "was fully engulfed with flames." [Doc. 27-2.] Although a neighbor alerted Mahoning

Case No. 4:07-CV-163
Gwin, J.

County 911 to the blaze at approximately 8:41 a.m. and volunteers from the Milton Township Fire Department arrived shortly thereafter, by 10:50 a.m. firefighters observed that the house "was completely gone and only the foundation remained.  There was [sic] the remains of a vehicle in the attached garage[,] . . . which appeared to be a Porsche."  [Doc. 27-2.]  Photographs taken by local officials and Joseph Jimmo ("Jimmo"), a passer-by, show the progression of the fire from initial flames at the rear of the house to the home's complete conflagration.  [Docs. 17, 29.]  With the structure "completely collapsed into the basement" and "no vertical walls or floor spaces remaining," the Ohio State Fire Marshal "cleared the scene at 1200 hrs."  [Doc. 27-3.]

The Milton Township Police Department, Volunteer Fire Department, and Ohio State Fire Marshal initiated immediate investigations into the fire's cause.  Lieutenant Wayne Unger ("Unger"), Fire Investigator for the Milton Township Volunteer Fire Department, filed a report on January 25, 2006.  [Doc. 27-2.]  In his report, Unger noted as "Undetermined" the "Area of fire origin," "Heat source," "Item first ignited," and "Type of material first ignited."  *Id.*  Unger further noted that the fire's "Cause of Ignition" was under investigation.  *Id.*  In the section of his report entitled "Human Factors Contributing to Ignition," Unger marked "None."  *Id.*  Upon completing his report, Unger turned-over the investigation to Assistant Ohio Fire Marshal Charles E. Hanni ("Hanni").  *Id.*

On January 26, 2006, Assistant Fire Marshal Hanni filed a "Ohio State Fire Marshal – Fire and Explosion Investigation Bureau Incident Report" that elaborated on Lieutenant Unger's findings.  [Doc. 27-3.]  In his report, Assistant Fire Marshall Hanni entered "Undetermined" next to a box marked "Type" and "Unknown" next to a box marked "Motive."  *Id.*  Hanni's report also included sections entitled "Origin Analysis," "Cause Determination," and "Case Status," which, in

Case No. 4:07-CV-163
Gwin, J.

their entirety, read as follows:

> ORIGIN ANALYSIS
> I began my scene examination at the front (SOUTH) side of the structure. Working in a clockwise direction, each side was examined and photographed. No walls remained and the roof system had collapsed and was completely consumed by the fire. The first and second floors had collapsed into the confines of the basement and were also consumed. Due to the extensive damage, an area of origin could not be determined.
>
> CAUSE DETERMINATION
> Based upon my training, education, experience and knowledge and due to the fact that it was not possible to locate an area of origin, the cause of the fire is undetermined.
>
> CASE STATUS
> Closed. Pending the development of additional information.

*Id.*

Hanni reported that, during his on-scene interview of Turner the previous day, Turner told Hanni that he had "turned the heat down and was using a space heater in the second floor office." *Id.* Turner also disclosed that he recently had electrical problems caused by a broken water line in the second floor bathroom. *Id.* Finally, Hanni noted that Milton Township's Fire Chief, Richard Pellin ("Pellin") had advised him that "he observed a set of tire tracks in the snow off of the driveway leading from the garage." *Id.*

Shortly after January 25, 2006, Defendant Liberty Mutual, Turner's insurer, initiated investigation of the fire's cause. *See, e.g.*, Docs. 19, 27-6. Liberty Mutual assigned Donald McConnell ("McConnell"), a claims adjuster and member of its Special Investigation Unit, as the lead investigator on the case. [Doc. 19.] McConnell prepared a sworn affidavit and participated in pre-trial discovery in support of Liberty Mutual's instant motion. *See, e.g.*, Docs. 19, 19-4, 19-5, 19-21, 27-4, 27-6.

Case No. 4:07-CV-163
Gwin, J.

According to Liberty Mutual's records, Lieutenant Unger, Assistant Fire Marshal Hanni, and Plaintiff Turner told the insurer that Turner used a space heater in his home and that he "had electrical problems in the home when the jaccuzzi [sic] tub had a plumbing leak." [Doc. 19-4.] Liberty Mutual noted that "fire dept believes [cause of fire] is electrical but no offical [sic] caused [sic] has been dtermined [sic] – fire undetermined." *Id.*

On January 31, 2006, McConnell visited the scene of the fire where he met with Milton's Fire Chief Pellin and "observed that [Turner's] house had burned completely to its foundation." [Doc. 19, at para. 9, 11.] Fire Chief Pellin gave McConnell "a copy of the official fire department report," presumably prepared by Lieutenant Unger. *Id.*, at para. 11. Although he knew of Assistant Fire Marshal Hanni's fire investigation report, McConnell reviewed it for the first time at his July 13, 2007 deposition. [Doc. 27-4, at 6.] McConnell's notes also indicate that "[t]he police chief created a report separate from the fire report. I will secure same asap." [Doc. 19-4, at 12.] A report of Police Chief Saltsman does not exist on this case's docket.

On February 6, 2006, McConnell toured the fire scene with Unger, Hanni, Pellin, Milton Police Chief Michael Saltsman ("Saltsman"), and Plaintiff Turner. [Doc. 19-4, at 12-14.] McConnell's notes from this day contain the following information:

> Cause and origin [of the January 25, 2006 fire] are undetermined at this time, and a damage estimate not available. No discernible items remained for authentication, except a vehicle in the garage which appeared to be a Porsche.
>
> * * *
>
> Cause of ignition: Under investigation
> Human factors contributing to ignition: None
> Fire suppression factors: None
> Structure Type: Enclosed building
> Main floor size: 2,466 square feet
> Building status: occupied and operation

-4-

Case No. 4:07-CV-163
Gwin, J.

> Number of stories with extreme damage: 3
> Presence of detectors: Undetermined
> Case status: Investigation open
>
> * * *
>
> The structure at this point was completely gone and only the foundation remained. There was the remains of a vehicle in the attached garage on the west end of the structure.
>
> * * *
>
> I was advised by Fire Marshal Hanni that me [sic] Turnere [sic] stated that he was using a space heater in his bedroom at the time [of the fire] due to running out of propane to heat his home. The investigation was turned over to the state Fire Marshals office and a full report to follow from Fire Marshal Hanni.

[Doc. 19-4.]

Although aware that Assistant Fire Marshall Hanni prepared a report, McConnell apparently did not read it and only saw it for the first time at his deposition for this case on July 13, 2007. [Doc. 27-4, at 6.]  As described, McConnell's notes also indicate knowledge that the police chief had created a separate report and say that McConnell would obtain a copy of that report.  Apparently McConnell never did so.

On March 30, 2006, McConnell and representatives from EFI Global, Inc., an external fire investigation service hired by Liberty Mutual, "conducted an investigation at the [Turner] Property for the purposes of determining the cause and origin of the fire." [Doc. 19, at para. 25.]  McConnell described the nature of the group's on-scene investigation:

> On March 30 we had Mr. Lee West from EFI Global, another gentleman from his company . . . [a]nother gentleman who was operating the backhoe and myself. . . . We sifted through the debris, and by that I mean screened it through a screening device and went through all the debris, quarantined off the building and certain quadrants, Mr. West handled that.  And his – he and the other gentleman tagged the evidence, and I believe they took that with them.  And they obtained all the photos [possessed by Turner's attorney].

Case No. 4:07-CV-163
Gwin, J.

[Doc. 27-4, at 4.]

EFI Global then took the screened material from the Turner site for analysis. *Id.*, at 4-5. McConnell did not involve himself further with EFI Global's analysis. *Id.* "After reviewing the extent of the damage and the debris at the scene, EFI advised [McConnell] that it could not determine the cause of the fire." [Doc. 19, at para. 25.] At his July 13, 2007 deposition, McConnell could not remember if EFI Global issued a written report to Liberty Mutual. [Doc. 27-4, at 9].

Liberty Mutual next "asked Turner to submit to an examination under oath (EUO)" on August 11, 2006 "to clarify the facts and help find a cause for the fire." [Doc. 19, at para. 27.] Liberty Mutual does not provide the Court with the transcript of the examination under oath, which, ultimately, "did not assist in finding a cause for the fire loss." *Id.*, at para. 29.

Unable to find a cause for the January 25, 2006 fire, Liberty Mutual changed its approach to its investigation. As set forth in Defendant's reply brief:

> Because the house was so badly burned, and because Plaintiff's Examination Under Oath did not shed any additional light on the cause [of the fire], Liberty Mutual decided to try a different type of analysis than EFI used. Using photographs taken by [Jimmo,] a witness at the fire scene, Liberty Mutual commissioned an alternative method of evaluation involving an analysis of the progression of the fire. Liberty Mutual's attorney assisting in the investigation, Matthew Smith, recommended using Harold Frank, because Smith was aware of Franck's experience in this type of analysis. Liberty Mutual submits that consulting an expert to analyze the [Jimmo] photographic evidence (which is virtually all there was to work with) was fulfilling its duty to both Plaintiff and its other policyholders to investigate the loss. Such efforts were not shopping around for someone to support any pre-made conclusion. Indeed, Franck's could have determined that the progression was consistent with facts as relayed by Plaintiff.

[Doc. 31, at 4-5.]

Thus, Liberty Mutual sent the Jimmo photographs and a diagram of Turner's house to Franck. [Doc. 19, at para. 29.] On November 3, 2006, Franck issued a report to McConnell which

-6-

Case No. 4:07-CV-163
Gwin, J.

concluded that "This fire was incendiary and accelerated." *Id.*, at para. 30.

In addition to his investigation into the source of the January 25, 2006 fire, McConnell also conducted an investigation into Turner's credit history and financial condition and concluded that "Turner's payment history reveals a string of late payments, minimum payments, and opening of new accounts." [Doc. 19, at para. 24.] McConnell recorded that Turner had approximately $17,677.10 in outstanding debt on six credit cards and his propane bill. [Doc. 17, 29.] In its motion, Liberty Mutual notes that Turner would have needed propane at the time of the fire and "an average propane delivery costs in excess of $500." [Docs. 17, 29.] Finally, Liberty Mutual says that Turner faced a $150 monthly charge to lift an administrative suspension of his license and had tax payments past due. *Id.*

Turner says that Liberty Mutual ignored evidence of his solvency at the time of the January 25, 2006 fire, including $70,000 in "current annual earnings capacity at General Motors," home equity of $185,000, the "1985 Porsche valued at $20,000," a condominium in Colombia, South America "valued at $25,000," and "bank accounts valued at $12,000." [Docs. 27, 32.] Turner says that he submitted this financial information to McConnell during the course his investigation. *Id.*

Throughout December 2006, McConnell and other Liberty Mutual investigators consulted with "Matt Smith." *See* Doc. 19-4, at 5. On January 9, 2007, McConnell sent Turner a letter informing him that Liberty Mutual had denied his insurance claims "based upon the information and evidence uncovered during our investigation to date, which indicates you had the means, motive and opportunity to have participated either directly or indirectly in the [January 25, 2006] fire loss occurrence." [Doc. 19-21.] McConnell copied "Matthew J. Smith, Esq." on the January 7, 2006 letter. *Id.* Specifically, Liberty Mutual said that its

Case No. 4:07-CV-163
Gwin, J.

> investigation included an origin and cause analysis of this fire, which determined the fire to be "incendiary" in nature. Accidental causes of fire were eliminated. Our investigation further revealed evidence suggesting a financial motive on your part to submit a false insurance claim. Finally, you fully admit being alone at the residence at or near the timeframe when this fire likely was ignited. Once again, based upon all of the evidence uncovered during the investigation of these claims, including the opinion of the forensic engineer and fire investigator retained as part of the investigation, it was determined that this fire originated at multiple points at approximately the same time, and an accelerant was utilized.
>
> Based upon the evidence obtained during our investigation, Liberty Mutual Fire Insurance Company is of the opinion [that] reasonable justification exists pursuant to the terms and conditions of your policies of insurance and under the laws of the state of Ohio to deny your claims.

[Doc. 19-21.]

On January 19, 2007, Turner filed suit against Liberty Mutual for breach of contract and bad faith. [Doc. 1.] Turner subsequently amended his complaint. [Doc. 8.] Liberty Mutual answered Turner's amended complaint and counterclaimed for subrogation and payment of Turner's mortgage. [Docs. 11, 12.] Liberty Mutual then moved for partial summary judgment to dismiss Turner's bad faith claim. [Docs. 17, 29.] Turner opposed this motion. [Docs. 27, 32.] Thus, the sole issue presented by this motion is whether material issues exist regarding whether Liberty Mutual proceeded in bad faith in its denial of Turner's insurance claims.

## II. Legal Standard

A court appropriately grants summary judgment only where no genuine issue of material fact bars movant's entitlement to judgment as a matter of law. FED. R. CIV. P. 56(c). The movant must demonstrate, through reference to pleadings and discovery responses, the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant properly supports his motion for summary judgment, the non-movant must "go beyond the pleadings," *Celotex*, 477 at 323, to show the existence of a "*genuine* issue of *material* fact" that requires trial,

-8-

Case No. 4:07-CV-163
Gwin, J.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original).  "A dispute over a material fact is 'genuine' if 'a reasonable jury could return a verdict for the non-moving party.'"  *McMillan v. Potter*, 130 Fed. App'x 793, 796 (6th Cir. 2005) (quoting *Anderson*, 477 U.S. at 248).

A court may consider only admissible evidence when ruling on a summary judgment motion. *Wiley v. United States*, 20 F.3d 222, 225 (6th Cir. 1994) (quotation omitted).  Rule 56(e) requires that affidavits used to support summary judgment pleadings have basis in the affiant's personal knowledge, set forth admissible evidence, and demonstrate the affiant's testimonial competence. FED. R. CIV. P. 56(e).  A court cannot consider inadmissible hearsay evidence when determining a motion for summary judgment.  *See, e.g.*, *Daily Press, Inc. v. United Press Int'l*, 412 F.2d 126, 133 (6th Cir.), *cert. denied*, 396 U.S. 990 (1969).

A federal court sitting in diversity must apply the substantive law of the forum state.  *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938); *Talley v. State Farm Fire & Cas. Co.*, 223 F.3d 323, 326 (6th Cir. 2000).  Ohio requires an insurer dutifully satisfy its customers' claims in good faith.  *See, e.g.*, *Mayle v. Allstate Indem. Co.*, No. 5:06CV1907, 2007 WL 437887, at *3 (N.D. Ohio Feb. 6, 2007) (citing *Zoppo v. Homestead Ins. Co.*, 644 N.E.2d 397, 399 (Ohio 1994)).

Ohio has established grounds for granting an insurer's "good faith" motion for summary judgment:

> to grant a motion for summary judgment brought by an insurer on the issue of whether it lacked good faith in the satisfaction of an insured's claim, a court must find after viewing the evidence in a light most favorable to the insured, that the claim *was fairly debatable and the refusal was premised on either the status of the law at the time of the denial or the facts that gave rise to the claim.* . . . To withstand a motion for summary judgment on a bad faith claim, an insured must oppose such a motion with evidence which tends to show that the insurer had no reasonable justification for refusing the claim, and the insurer either had actual knowledge of

-9-

Case No. 4:07-CV-163
Gwin, J.

>that fact or intentionally failed to determine whether there was any reasonable justification for refusing the claim.

*Tokles & Sons, Inc. v. Midwestern Indem. Co.*, 605 N.E.2d 936, 943 (Ohio 1992) (emphasis added).

Thus, in Ohio, an insurer fails to exercise good faith where it predicates its refusal to pay a customer's claim upon circumstances that do not "furnish reasonable justification therefor." *Mayle*, 2007 WL 437887, at *3 (citing *Tokles* and *Zoppo*). An insurer can establish its good faith denial of a customer's claim by establishing the likelihood of its prevailing on its arson defense. *Id.* An Ohio arson defense has three elements: (i) fire of incendiary origin; (ii) motive on part of the insured; and, (iii) opportunity of the insured to cause the fire. *See, e.g.*, *Caserta v. Allstate Ins. Co.*, 470 N.E.2d 430, 433 (Ohio App. 1983)). An insurer can meet this "reasonable justification" standard through direct or circumstantial evidence. *See, e.g.*, *Arms v. State Farm Fire & Cas. Co.*, 731 F.2d 1245 (6th Cir. 1984).

### III. Analysis

Liberty Mutual characterizes its denial of Turner's insurance claims "reasonably justified" based on Harold Franck's November 3, 2006 report that the January 25, 2006 "fire was incendiary and accelerated," as well as its elimination of "the possibility of accidental causes of the fire" and its belief that Turner had motive and opportunity to start the blaze. [Docs. 17, 19, 29.] Liberty Mutual relies on, *inter alia*, *Mayle*, *Zoppo*, and *Helmick* in its legal argument supporting its instant motion. *Id.* Liberty Mutual characterizes these cases as "dispositive" because they involved insurers capable of prevailing on their arson defense, i.e., legal questions that did not involve "genuine issues of material fact." *Id.* As such, Liberty Mutual says that "the law in this case is clear" and it "is entitled to summary judgment." [Doc. 31.]

Turner disagrees. Turner says that genuine issues of material fact exists regarding whether

-10-

Case No. 4:07-CV-163
Gwin, J.

Liberty Mutual "acted with reasonable justification in refusing to pay his claims." [Docs. 27, 32.] Turner argues that Liberty Mutual acted unreasonably by rejecting three (3) prior opinions of fire investigators," all of which concluded that the cause of the [January 25, 2006] fire was undeterminable." *Id.* Turner further says that Liberty Mutual acted unreasonably when it failed "to follow its own internal procedures for investigating a fire loss," specifically by failing "to consider the Ohio State Fire Marshall's report" that "concluded that the cause and origin of the fire was undetermined." *Id.* Finally, Turner disagrees that Liberty Mutual "eliminated accidental causes of the January 25, 2006 fire because it did not consider alternative causes of the fire, including his space heater and jacuzzi's faulty wiring." *Id.*

To grant Liberty Mutual's motion for partial summary judgment, the Court must find, after viewing the evidence and all reasonable inferences in a light most favorable to Turner, that the claim "was fairly debatable." *See Tokles*, 605 N.E.2d at 943. In addition, Liberty Mutual must also show that its refusal to pay Turner's claims "was premised on either the status of the law at the time of the denial or the facts that gave rise to the claim." *Id.* In opposing Liberty Mutual's motion, Turner must produce evidence which tends to show that Defendant had no reasonable justification for refusing his claims and that it either had actual knowledge of that fact or intentionally failed to determine whether any reasonable justification existed for refusing the claim. *Id. See also Mayle*, 2007 WL 437887, at *3.

Liberty Mutual does not show that it "was fairly debatable" that the January 25, 2006 fire had an incendiary origin. *Tokles*, 605 N.E.2d at 943; *Caserta*, 470 N.E.2d at 433. Liberty Mutual's reason for denying Turner's fire insurance claim relies almost entirely on an unsigned report of Harold Franck, its forensic engineer and fire investigator, which concludes that the January 25, 2006

Case No. 4:07-CV-163
Gwin, J.

fire "was incendiary" and the result of the use of an accelerant.[1] As noted by Turner, Liberty Mutual does not present any other evidence that the fire arose from arson or accelerated through the use of gasoline, kerosene, or any other accelerant. Turner also notes that Lieutenant Unger, on-the-scene as Turner's home "was fully engulfed with flames," stated that the house "was completely gone and only the foundation remained." Unger did not speculate on the use of any incendiary device or accelerant as the cause of the January 25, 2006 fire. The record reflects similar observations of Assistant Fire Chief Hanni and EFI Global. Thus, Turner argues that Liberty Mutual ignored all three observations and proceeded to deny his claim based on the bald assertion in Franck's report. In doing so, Turner challenges that Liberty Mutual's contention that it acted in good faith in denying his claim. Thus, Plaintiff has created a genuine issue of material fact triable to a jury.

The Court arrives at this conclusion particularly given Liberty Mutual's disregard of the reports of Lieutenant Unger, Assistant Fire Marshall Hanni, and the findings of EFI Global. All of these investigators conducted on-site inquiries and concluded that they could not determine the fire's cause. The Court does not consider the strength of Liberty Mutual's arson defense at this time. However, the Court does find that the unanimity between the on-site investigators, the lack of direct evidence, and questions around Franck's report raise material issues whether Liberty Mutual acted in good faith and had reasonable justification to deny Turner's claims.

---

[1] Arguably, Franck's unsigned November 3, 2006 "expert report" represents inadmissible hearsay in this motion for summary judgment. *See, e.g.*, *Daily Press*, 412 F.2d at 133. McConnell's references to Franck's report his affidavit also represent inadmissible hearsay because they contain out-of-court statements made by someone other than McConnell to prove the truth of the matter asserted, i.e., that the January 25, 2006 fire "was incendiary and accelerated" and, therefore, rightly formed the basis of Liberty Mutual's good faith denial of Turner's claims. [Doc. 19.] The Court does not reach this evidentiary issue, however, because Plaintiff Turner successfully presents a number of genuine issues related to Liberty Mutual's denial of his fire insurance claims best tried to a jury.

Case No. 4:07-CV-163
Gwin, J.

Similarly, Liberty Mutual does not adequately show at this stage that Turner had financial motive or opportunity to set the January 25, 2006 fire. In opposing Liberty Mutual's motion for partial summary judgment, Turner presents evidence that he had equity in the house and other income sources sufficient to dispel the insurer's argument that he had motive to commit arson. Again, the Court does not opine on the parties' positions, but only notes that Turner's motive, if any, presents a genuine issue triable to a jury.

Finally, Liberty Mutual does not demonstrate the absence of genuine issues of material fact as to whether Turner had opportunity to start the January 25, 2006 fire. Defendant presents no direct evidence that shows Turner – or anyone else – ignited the blaze that "fully engulfed" Turner's home. Claims Adjuster McConnell observed on his first visit to the scene on January 31, 2006 "that the house had burned completely to its foundation." As Turner indicates, the only circumstantial evidence presented consist of tire tracks in the snow that no investigator conclusively traced to any vehicle. Further, Turner underlines – and Liberty Mutual admits – that the insurer undertook no investigation into alternative sources of the January 25, 2006 fire. Turner's opportunity to start the fire remains an open question and it is unclear that Liberty Mutual acted with reasonable justification basing its denial of Turner's claim on its conclusion that he committed arson.

Thus, based on its current pleadings, Liberty Mutual has not demonstrated the absence of material issues regarding the cause of the January 25, 2006 fire or Turner's financial motive or opportunity to set the fire. Turner's opposition to Liberty Mutual's motion for partial summary judgment highlights inconsistencies of the insurer's investigation and questions Defendant's failure to pursue alternative causes of the fire. Thus, "genuine issues of material fact" exist as to whether Liberty Mutual proceeded in good faith in its denial of Turner's claims. As a result, the Court

Case No. 4:07-CV-163
Gwin, J.

allows Turner's full complaint to proceed to trial.

## IV.  Conclusion

For these reasons, the Court **DENIES** Defendant Liberty Mutual's motion for partial summary judgment on the issue of its bad faith denial of Plaintiff Turner's insurance claims.

IT IS SO ORDERED.


Dated: August 21, 2007                    s/        *James S. Gwin*
                                          JAMES S. GWIN
                                          UNITED STATES DISTRICT JUDGE